# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

SALLY K. TAYLOR,

                Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:10-cv-05891-RBL-KLS

REPORT AND RECOMMENDATION

Noted for November 11, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below defendant's decision should be reversed and this matter should be remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

On October 30, 2006, plaintiff filed an application for disability insurance and another

REPORT AND RECOMMENDATION - 1

one for SSI benefits, alleging disability as of December 17, 2005, due to degenerative disc disease, spinal problems, asthma, high blood pressure, kidney problems, club feet, carpal tunnel syndrome, stomach problems, and depression. See Administrative Record ("AR") 11, 85, 90, 106. Both applications were denied upon initial administrative review and on reconsideration. See AR 11, 47, 53, 56. A hearing was held before an administrative law judge ("ALJ") on July 28, 2009, at which plaintiff did not appear, but at which her legal representative did, and at which a vocational expert also appeared and testified. See AR 30-39.

On August 27, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 11-24. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 8, 2010, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On December 8, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative record was filed with the Court on March 8, 2011. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for further administrative proceedings, because the ALJ erred: (1) in failing to find her bilateral cord lesions to be a severe impairment; (2) in failing to properly consider all of her mental functional impairments; and (5) in finding her to be capable of returning to her past relevant work as a telephone solicitor. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision to deny benefits should be reversed, this matter should be remanded for further administrative proceedings. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

REPORT AND RECOMMENDATION - 2

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of that process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b)]; SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

In this case, the ALJ found plaintiff had severe impairments consisting of degenerative disc disease, club feet, carpal tunnel syndrome, an atrophied kidney, a pain disorder, a major depressive disorder, and a polysubstance disorder. See AR 13. The ALJ further found in relevant part as follows:

> . . . The claimant had problems related to voice changes. The problem began in 2005 after a boyfriend strangled her. She spoke in quiet tones for a couple of weeks before her voice improved. In March of 2007, she complained that her voice was hoarse off and on ever since. The claimant also had polyps removed from her vocal cords in 1992. An examination revealed bilateral vocal fold lesions and likely right vocal fold cyst with left vocal fold nodule. A micro direct laryngoscopy was advised; however, there is no indication the claimant went through with this procedure (Exhibit B13F). There is no evidence these conditions have resulted in more than minimal limitation to the claimant's ability to perform work activity. Therefore, th[is] impairment[ is] not [a] severe impairment[ ]as that term is defined and utilized under the Social Security Act and Regulations.

AR 14. Plaintiff argues the ALJ erred in not finding her bilateral vocal cord lesions to be severe impairments as well. The undersigned disagrees.

In support of her argument here, plaintiff points to her own self-reports, as well as to one observation made by a Social Security employee that reads in relevant part: "**[H]er breathing sounded labored, her voice was very scratchy - very difficult to hear or understand some of**

REPORT AND RECOMMENDATION - 4

**what she said**." AR 103 (emphasis in original). This evidence, plaintiff asserts, shows her vocal cord lesions have had more than a slight impact on her ability to function. But at step two of the disability evaluation process, although the ALJ must take into account a claimant's pain and other symptoms (see 20 C.F.R. § 404.1529, § 416.929), the severity determination is made solely on the basis of the objective medical evidence in the record:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. *At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.* If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA.

SSR 85-28, 1985 WL 56856 *4 (emphasis added). Plaintiff, however, has not cited any medical evidence in the record that shows such an impact on her ability to work. Accordingly, the ALJ's findings at step two were not erroneous.

II. The ALJ's Evaluation of Plaintiff's Mental Impairments

If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

REPORT AND RECOMMENDATION - 5

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

### A. The Moderate Limitation in Social Functioning Found by the ALJ

Here, the ALJ assessed plaintiff with a mental residual functional capacity that included the ability to have superficial contact with the general public. See AR 16. Plaintiff asserts the ALJ failed to properly explain how he came to this conclusion – that is, how he could find this was the only limitation in social functioning plaintiff had – given that the ALJ found at step three of the sequential evaluation process that she had moderate limitations in social functioning. See AR 15. The issue here, however, is whether the ALJ properly considered plaintiff's mental functional capabilities in terms of her residual functional capacity. But the determination made at step three is separate and distinct from the residual functional capacity assessment employed at steps four and five. Indeed, SSR 96-8p, expressly provides in relevant part:

> . . . The psychiatric review technique described in . . . [20 C.F.R. § 404.1520a and 20 C.F.R. §] 416.920a . . . requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in [four functional areas set forth in 20 C.F.R. § 404.1520a(c)(3) and 20 C.F.R. § 416.920a(c)(3), including social functioning, known also as the "paragraph B" criteria]. The adjudicator must remember that the limitations identified in the "paragraph B" . . . criteria are *not* an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential [disability] evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process *requires a more detailed assessment* by itemizing various functions contained in the broad categories found in [the "paragraph B" criteria].

REPORT AND RECOMMENDATION - 6

1996 WL 374184 *4 (emphasis added). Accordingly, the ALJ was not required to include in his assessment of plaintiff's RFC a moderate limitation in social functioning, merely because such a limitation was found for purposes of step three.

B. <u>Dr. Toews</u>

Plaintiff further asserts the ALJ's mental residual functional capacity assessment is not consistent with the medical opinion evidence from Jay M. Toews, M.D., a psychiatrist who evaluated plaintiff in early February 2007. <u>See</u> AR 248-52. Specifically, plaintiff acknowledges that Dr. Toews found she had "relatively good social skills," but points out he also reported she was " wary of interpersonal relationships," did "not form close emotional relationships" and gets "stressed with repeated interactions, and with customer service types of interaction." AR 251. These findings, plaintiff argues, indicate she has greater social functioning limitations than the ALJ found. The undersigned agrees.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>See</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725. The ALJ can do this

REPORT AND RECOMMENDATION - 7

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."

REPORT AND RECOMMENDATION - 8

Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The ALJ gave "significant weight" to the opinion of Dr. Toews, stating it supported a finding that plaintiff was "capable of superficial contact with the general public." AR 22-23. At the hearing, the ALJ elucidated on what he meant by "superficial" contact:

> . . . When I say superficial, . . . it's not limited in the duration. It's limited in . . . how in depth and involved the conversation is as opposed to the duration or the amount of conversations one has. So it would be the difference between collaborative and noncollaborative work with coworkers. You know you have constant contact with your coworkers under either circumstance, but one you get very intimately involved with each other in accomplishing the job. And that's essentially what we're talking about . . . [I]t's not limited in the numbers of contacts or the duration. It's just that it's simple type interaction with the people that . . . she would be dealing with as opposed to way in-depth, intricate interaction.

AR 36-37. But the ALJ's description is not consistent with the report that plaintiff got stressed with "repeated" interactions, as Dr. Toews did not indicate what was being referred to here was limited to repeated "in-depth, intricate interaction." The ALJ's description, furthermore, would appear to also apply to interactions with co-workers, whereas he did not place the same type of restriction on interacting with co-workers in his assessment of plaintiff's RFC. Because the ALJ failed to adequately explain this discrepancy, he erred.

### C. Dr. Beaty and Dr. Kester

The record contains a mental residual functional capacity assessment form completed by Edward Beaty, Ph.D., in early February 2007, the findings of which were affirmed by Eugene Kester, M.D., in early May 2007. See AR 253-55, 288. In Section I of that form ("SUMMARY CONCLUSION"), Drs. Beaty and Kester checked off boxes indicating plaintiff was moderately limited in several areas of social functioning. See AR 254. In Section III of the form ("FUNCTIONAL CAPACITY ASSESSMENT"), Dr. Beaty and Dr. Kester further opined in relevant part in regard to social functioning:

REPORT AND RECOMMENDATION - 9

> . . . [She f]eels safer isolating; reports social interactions results in stress.
> Socializes w/neighbor only. [She has g]ood verbal skills and is cooperative.
> She appears to be capable of superficial social interactions with [the] public.
> . . . [She is c]apable of working tasks that are more independent in nature.
> [She w]ill benefit from clear, consistent supervision.

AR 255.

The ALJ did not specifically address the social functional limitations Dr. Beaty and Dr. Kester checked in Section I,[1] but found the opinions provided in Section III to be "not consistent with the [evaluation performed by Dr. Toews] or the record as a whole," stating further that "[a]t the time [those limitations were assessed, plaintiff] was not in mental health counseling and she was not taking any medication," indicating her "symptoms were not as significant as ha[d] been alleged." AR 22. However, the undersigned agrees with plaintiff that in so finding, the ALJ failed to consider whether plaintiff had a good reason for not receiving mental health counseling or medication. See SSR 96-7p, 1996 WL 374186 *7.

An ALJ "must not draw any inferences" about a claimant's symptoms or their functional effects from a failure to seek treatment, "without first considering any explanations" the claimant "may provide, or other information in the . . . record, that may explain" such failure. Id. There is evidence in the record that on at least some occasions adverse medication side effects and a lack of financial resources resulted in plaintiff not seeking more treatment. See AR 201-02, 243, 249-50, 337; see also Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (improper to discount credibility on basis of failure to pursue treatment, when claimant has

---

[1] To the extent plaintiff is arguing the ALJ erred in failing to discuss or explain why he was not adopting any of the moderate limitations in social functioning Dr. Beaty and Dr. Kester checked in Section I, the undersigned finds no error here. Pursuant to the directive contained in the Social Security Administration's Program Operations Manual System ("POMS"), "[i]t is the narrative written by the psychiatrist or psychologist in [S]ection III . . . that adjudicators are to use as the assessment of RFC." POMS DI 25020.010(B)(1) (emphasis in original). Although it is true that the POMS "does not have the force of law," the POMS has been recognized as "persuasive authority" in the Ninth Circuit. Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006). Nor does the undersigned find or plaintiff provide any valid reasons for not following that directive in this case.

REPORT AND RECOMMENDATION - 10

good reason for not doing so, such as lack of insurance); Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (benefits may not be denied due to failure to obtain treatment because of inability to afford it). The ALJ's failure to discuss this evidence was error.

Plaintiff also argues the ALJ erred in finding "no support for a moderate limitation in concentration, persistence, and pace," and "no evidence" that plaintiff's pain "would episodically disrupt her concentration" as further found by Dr. Beaty and Dr. Kester. AR 22. But as the ALJ noted, plaintiff "performed well on the mental status examination" Dr. Toews conducted, and there were "no clinical tests to show" that plaintiff was moderately limited in this area of mental functioning. AR 22, 251; see Batson, 359 F.3d at 1195 (opinion of even treating physician need not be accepted if it is inadequately supported by clinical findings).

Plaintiff asserts the ALJ himself appears to have accepted that she had significant pain, because he found her pain disorder to be a severe impairment. But as discussed above, the step two determination is merely a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290. In addition, also as discussed above, the sole fact that a claimant has been diagnosed with an impairment is an insufficient basis upon which to make a finding of disability. Accordingly, just because plaintiff's pain disorder was accepted by the ALJ as being a severe impairment at step two, this does not mean the ALJ was required to find that impairment had an actual impact on her residual functional capacity.

D.   Ms. Molina and Ms. Anderson

The record contains a state agency psychological/psychiatric evaluation form completed in early June 2008, by Tracy Molina, M.S.W., who assessed plaintiff with a number of moderate to marked limitations in social functioning based on diagnoses of a moderate major depressive disorder and posttraumatic stress disorder. See AR 301-02. The ALJ rejected those limitations,

REPORT AND RECOMMENDATION - 11

because while they "in part" were due to plaintiff "allegedly being fired in the past for arguing with a supervisor," she reported elsewhere that the problem was that her supervisor "called her stupid in from [sic] of customers," indicating "the supervisor may have instigated the argument and may have been the cause of the problem." AR 23. Further, the ALJ stated that although the form Ms. Molina completed indicated plaintiff had social anxiety and felt easily overwhelmed with stress and frustration, this was not consistent with plaintiff's "self-description of being a people person, outgoing, friendly, and goofy." Id.; see also AR 302.

The undersigned again agrees with plaintiff that these are not valid reasons for rejecting the limitations assessed by Ms. Molina. First, it should be noted plaintiff told Ms. Molina she had lost "jobs" in the past for arguing with "supervisors", indicating this had occurred on more than one occasion. AR 302. For example, plaintiff also reported she was fired from one job for refusing to wait on a customer, which she attributed to her depression. See AR 106. In addition, there is no indication that the incident where plaintiff was called "stupid" by her supervisor was instigated by the supervisor himself or herself, as opposed to a reaction to something plaintiff did as a result of her mental health impairments. In other words, the ALJ here appears to be merely speculating as to the cause of plaintiff's termination on that one occasion.

As for plaintiff's report that she was "a people person, outgoing, friendly, [and] goofy" (AR 336), Dr. Towes reported she was "wary of interpersonal relationships," did "not form close emotional relationships" and got "stressed with repeated interactions." AR 251. Drs. Beaty and Kester noted as well that plaintiff felt safer when isolating, that social interactions resulted stress and that she socialized only with her neighbor. See AR 255, 269; see also AR 325 (noting social isolation and not trusting people). The ALJ did not adequately explain why the one report of being a people person, outgoing, friendly, and goofy, outweighed or was more reliable than the

REPORT AND RECOMMENDATION - 12

other reports that appear to contradict that report.

Another psychological/psychiatric evaluation form was completed in late February 2009, by Russell Anderson, M.S.W., who found plaintiff to be markedly limited in two areas of social functioning based on the same diagnoses Ms. Molina made, as well as amphetamine dependence. See AR 324-25. The ALJ rejected these limitations for the following reasons:

> . . . [T]his assessment was only 2 days after her release from the psychiatric unit at which time it was noted she was only mildly depressed and she was released without medication. Furthermore, at her counseling intake session, it was determined the claimant was not acute. One would think if the claimant still had such significant mental health limitations, she would have been released from the hospital with medications and there would have been a hard push to get the claimant mental health counseling after she was released. This is further evidence the claimant tends to exaggerate her symptoms in an attempt to obtain benefits.

AR 23. Plaintiff argues, and once more the undersigned agrees, that these are not valid reasons for discounting Mr. Anderson's opinion regarding social functioning. As discussed above, there is evidence in the record that plaintiff may have had valid reasons for not seeking greater mental health treatment, which the ALJ did not address, but which he was required to consider before he could discount the severity of plaintiff's symptoms and limitations on this basis. Thus, here too the ALJ's failure to do so results in reversible error.

III.     The ALJ's Step Four Determination

The ALJ found plaintiff was capable of performing her past relevant work as a telephone solicitor at step four of the sequential disability evaluation process, based in part on the fact that it was substantial gainful activity ("SGA"). See AR 23. Plaintiff argues the evidence in the record fails to show that work was SGA, asserting it suggests her average monthly earnings were below the presumptive SGA level for the years in which she performed it. See AR 96-97, 107, 329; 20 C.F.R. § 404.1574, § 416.974. Defendant points to some of the same evidence, arguing

REPORT AND RECOMMENDATION - 13

that it shows she earned an hourly rate that would indicate the presumptive SGA level had been met. See AR 107.

The undersigned finds some merit in the way each of the parties has interpreted the above evidence. The problem is the ALJ himself merely stated the work plaintiff performed in the past as a telephone solicitor constituted SGA, without explaining the basis for so finding. Given that, as just discussed, the evidence concerning presumptive SGA is ambiguous – and that the ALJ did not point to any other evidence in the record that would support a finding of SGA[2] – the Court is unable to determine if the ALJ's determination here was proper. Accordingly, in addition to the ALJ's errors in evaluating the medical evidence in the record, the ALJ's step four determination cannot be upheld for this reason as well.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further

---

[2] As indicated, a claimant's earnings create only a presumption that he or she is or is unable to engage in SGA. A claimant's earnings, in other words, "are not the end of the inquiry." Soria v. Callahan, 16 F. Supp.2d 1145, 1149 (C.D. Cal. 1997). "Substantial work activity" is defined "as work that 'involves doing significant physical or mental activities' and 'is the kind of work usually done for pay or profit.'" Id. (quoting 20 C.F.R. § 416.972(a), (b)). Thus, for example, "'[w]ork may be substantial even if it is done on a part-time basis.'" Id. (quoting Byington v. Chater, 76 F.3d 246, 250 (9th Cir. 1996)). In addition, "'[w]ork activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.'" Id. at 1150 (quoting 20 C.F.R. §§ 404.1572(b), 416.972(b)). Once more, though, the ALJ did not discuss whether plaintiff's past work as a telephone solicitor constituted SGA on this basis, let alone on the basis of plaintiff's earnings.

REPORT AND RECOMMENDATION - 14

administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's social functioning, her residual functional capacity and her ability to perform her past relevant work as a telephone solicitor, this matter should be remanded to defendant to conduct further administrative proceedings. If on remand it is determined that plaintiff is unable to perform her past relevant work, defendant shall proceed on to step five of the sequential disability evaluation process to determine whether plaintiff is capable of performing other jobs existing in significant numbers in the national economy.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly concluded plaintiff was not disabled. As such, the undersigned recommends as well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn,

REPORT AND RECOMMENDATION - 15

474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 11, 2011**, as noted in the caption.

DATED this 24th day of October, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16